# 13-4385-cv

## United States Court of Appeals

*for the*

## Second Circuit

LIU MENG-LIN,

*Plaintiff-Appellant,*

– v. –

SIEMENS AG,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

KAISER SAURBORN & MAIR, P.C.
*Attorneys for Plaintiff-Appellant*
111 Broadway, Suite 1805
New York, New York 10006
(212) 338-9100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT I.
        STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT II.
        DODD-FRANK WHISTLE BLOWER PROTECTION
        APPLIES TO OVERSEAS EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    Siemens Voluntarily Subjected itself to U.S. Securities
              Laws Including Dodd-Frank . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    Congress Intended Anti-Retaliation Protection to Extend
              to Overseas Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PONT III.
        PLAINTIFF ENGAGED IN PROTECTED ACTIVITY
        UNDER DODD-FRANK ENTITLING HIM TO
        ANTI-RETALIATION PROTECTION . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.    Overseas Employees Who Engage in a Category of
              "Disclosures" Protected by SOX Are Entitled to
              Dodd-Frank Protection Regardless of Whether SOX

i

       Itself Extends Extraterritorially ........................... 19

B.    SOX Protects Employees of Public Companies Who
        Complain Internally About FCPA Violations ................. 20

POINT IV.
       DODD-FRANK DOES NOT REQUIRE AN EMPLOYEE
       TO DISCLOSE INFORMATION TO THE SEC BEFORE
       BEING ELIGIBLE FOR DODD–FRANK ANTI-RETALIATION
       PROTECTION ............................................ 24

CONCLUSION ................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Asadi v. G.E. Energy (USA), L.L.C.*,
2013 WL 3742492 (5th Cir., 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 24, 25, 28

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 27, 28

*Egan v. TradingScreen, Inc.*,
2011 WL 1672066 S.D.N.Y.,2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 25

*Ellington v. Giacoumakis*,
--- F.Supp.2d --- , 2013 WL 5631046 (D. Mass. Oct 16, 2013) . . . . . . . . . . . . . 25

*Genberg v. Porter,* No. 11 Civ. 2434(WYD)(MEH),
2013 WL 1222056, at *10 (D.Colo. Mar. 25, 2013) . . . . . . . . . . . . . . . . . . . . 25

*Guippone v. BH S & B Holdings LLC*,
737 F.3d 221(2nd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Guyden v. Aetna, Inc.*, 544 F.3d 376 (2d. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 23

*In re Gupta*, 2011 WL 121916 (Dep't of Labor Jan. 7, 2011) . . . . . . . . . . . . . . . 23

*Kramer v. Trans-Lux Corp.*, No. 3:11CV1424 (SRU),
2012 WL 4444820, at *4 (D.Conn. Sept.25, 2012) . . . . . . . . . . . . . . . . . . . . . 25

*Morrison v. National Australia Bank Ltd.,* 561 U.S. 247,
130 S.Ct. 2869, 177 L.Ed.2d 535 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Murray v. UBS Sec., LLC,* 12 CIV. 5914 (JMF),
2013 WL 2190084 (S.D.N.Y. May 21, 2013) . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Nollner v. S. Baptist Convention, Inc.,* 852 F.Supp.2d 986
(M.D.Tenn.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997) . . . . . . . . . . . . . . . . . . . . . . 27

*Rosenblum v. Thomson Reuters (Markets) LLC,*
--- F.Supp.2d ---, 2013 WL 5780775 (S.D.N.Y. Oct 25, 2013) . . . . . . . . . . . . . 25

*S.E.C. v. World-Wide Coin Inv., Ltd.,* 567 F.Supp. 724
(N.D.Ga.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sharkey v. J.P. Morgan Chase & Co*, 805 F.Supp.2d 45,
2011 WL 3663401 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Virgilio v. City of N.Y.,* 407 F.3d 105, 112 (2d Cir.2005) . . . . . . . . . . . . . . . . . 27


**Statutes & Other Authorities**
17 C.F.R. § 240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 22

18 U.S.C. § 1514A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Dodd-Frank Wall Street Reform and Consumer Protection Act,
15 U.S.C. § 78u-6(h)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Fed. R. Civ. P. 12(B)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 30

Section 806 of the Sarbanes-Oxley Act of 2002 . . . . . . . . . . . . . . . . . . . . . . *Passim*

This Brief is submitted on behalf of the Appellant, Meng-Lin Liu ("Liu" or "Plaintiff") in support of his appeal of a final judgment on the United States District Court for the Southern District of New York entered on October 23, 2013, which dismissed Plaintiff's Amended Complaint.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the claims asserted in this action arise under the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1)(B).

The Court of Appeals has jurisdiction pursuant to 28 U.S.C. §1291 because this appeal is from a final judgment entered in the District Court on October 23, 2013 which disposed of all claims with respect to all of the parties.  (JA A-72)[1]

Liu's appeal to this Court is timely because his Notice of Appeal was filed on November 14, 2013, within 30 days of entry of the final Judgment in the District Court.  (JA A-72 to JA A-73)

## STATEMENT OF ISSUES PRESENTED

1.    Whether the anti-retaliation provision ("Anti-Retaliation Provision") of the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010, 15

---

[1]      References to "JA" are to the Joint Appendix.

U.S.C. § 78u-6(h)(1) ("Dodd-Frank"), applies extraterritorially to overseas employees of companies that have voluntarily listed their securities on a United States exchange.

2.      Whether protected activity for purposes of the Anti-Retaliation Provision of Dodd–Frank includes the making of a disclosure by an overseas employee that would be protected by Section 806 of the Sarbanes-Oxley Act of 2002 if made by a domestic employee.

3.      Whether internal disclosures and objections by an employee of a publicly-traded company relating to conduct that violates the Foreign Corrupt Practices Act and the implementing rules of Securities and Exchange Commission ("SEC") is protected by Section 806 of the Sarbanes-Oxley Act of 2002.

4.      Whether an employee must first make disclosures to the SEC in order to acquire anti-retaliation protection under Dodd–Frank.

## STATEMENT OF THE CASE

Liu filed this action in the District Court against his former employer, Siemens A.G. ("Siemens"), on January 15, 2013.  (JA A-2)  In his Amended Complaint, Liu contends that Siemens removed him from his position as compliance officer and terminated his employment in retaliation for his disclosures relating to a corruption and kickback scheme he uncovered in violation

2

of the Anti-Retaliation Provision of Dodd–Frank.

On July 2, 2013, Defendant filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(B)(6).  (JA A-56)

By Memorandum and Oder ("Memorandum and Order") dated October 21, 2013, the Hon. William H. Pauley granted Siemens' motion and dismissed this action.  (JA A-58 to A-71)  In the Memorandum and Order, the District Court held that this action must be dismissed for two reasons.  First, it held that the anti-retaliation provision of Dodd-Frank does not apply extraterritorially to overseas employees of foreign companies.  Second, the District Court held that Liu's disclosures were not "required or protected" by any of the legal provisions specified in Dodd-Frank's Anti-Retaliation Provision and that Liu therefore did not engage in protected activity for anti-retaliation purposes.

Judgment dismissing the complaint was entered by the District Court on October 23, 2013.  (JA A-72)

## SUMMARY OF ARGUMENT

The District Court erred in granting Siemens' motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6).  First, the language, context and SEC interpretations of Dodd-Frank's whistleblower provisions demonstrate that such protection applies to overseas employees of foreign companies, such as Siemens,

3

that voluntarily elect to subject themselves to United States securities laws in return for obtaining the benefits of having their shares listed on a U.S. stock exchange. Dodd-Frank gave authority to the SEC to enact implementing regulations relating to its whistleblower provisions. In both its final regulations, and the accompanying commentary, the SEC made clear that it has interpreted the statute to include overseas employees within the definition of a "whistleblower" for purposes of the Dodd-Frank provisions relating to eligibility to receive a bounty for disclosing information to the SEC. Both the statutory language and the SEC's implementing regulations demonstrate that the definition of a whistleblower for purposes of the Anti-Retaliation Provision is at least as broad as it is for the bounty provision.

Second, the territorial limitations of the Sarbanes–Oxley Act of 2002 ("SOX") do not provide an independent limitation on the ability of an overseas employee to qualify as a whistleblower under Dodd-Frank. Such a duplicative, bi-level "case-within-a-case" extraterritoriality analysis is based on a misreading of the Dodd-Frank statute. Rather, the criteria for triggering Dodd-Frank anti-retaliation protection is whether the <u>disclosures</u> are of a type that is protected by SOX, not whether the specific <u>employee</u> would be protected by SOX based on his location domestically or overseas if he had chosen to file a separate SOX

4

proceeding with the Department of Labor.

Third, because Liu complained about "violations of ... [a] rule or regulation of the Securities and Exchange Commission..." (18 U.S.C. § 1514A), he is eligible for Dodd-Frank anti-retaliation protection because he made the type of disclosures that would be protected by SOX.  Specifically, the conduct about which Liu complained included the falsification of records relating to the corrupt transactions at issue.  This violated SEC Rule 13b2-1 (17 C.F.R. § 240.13b2-1) – the record-keeping rule of the SEC (enacted to implement the FCPA) which provides that "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to Section 13(b)(2)(A) of the Securities Exchange Act." Accordingly, such disclosures fall squarely within the SOX whistleblower provision, which protects whistleblowers who complain about conduct that violates rules or regulations of the SEC.

Finally, although the District Court did not reach the issue, this Court should defer to the SEC's interpretation of Dodd-Frank and hold that Dodd-Frank does not require an employee to disclose information to the SEC before being eligible for Dodd–Frank Anti-Retaliation protection.  Although there is a split in authority on this issue, this Court should follow the overwhelming majority of decisions which have found that the SEC's interpretation is entitled to *Chevron*

5

deference.

## STATEMENT OF FACTS

Siemens is a multinational electrical engineering and electronics company that has approximately 370,000 employees globally and operates in 190 countries worldwide. It has a class of securities which are publicly traded on the New York Stock Exchange. (JA A-9, ¶ 7). In 2008 Siemens AG pleaded guilty to conspiring to commit violations of the U.S. Foreign Corrupt Practices Act ("FCPA") and paid record U.S. and German criminal fines and penalties totaling more than $1.6 billion (JA A-9, ¶ 8). In its U.S. Plea Agreement Siemens admitted to intentionally failing to implement appropriate anti-corruption internal controls and to knowingly circumventing its existing internal controls. *Id.* It also agreed as part of the Plea Agreement to overhaul and substantially improve its compliance organization and controls. *Id.*

Siemens' Healthcare Sector business develops, manufactures and markets diagnostic and therapeutic systems, devices and consumables, as well as information technology systems for clinical and administrative purposes.(JA A-9, ¶8). Two of the primary types of diagnostic systems sold by Siemens are Magnetic Resonance Imaging ("MRI") and Computed Tomography ("CT") scanners. *Id.*

6

In March 2008, Liu was hired by Siemens' wholly-owned Chinese
subsidiary, Siemens China Ltd. ("SLC") as the Group Compliance Officer for the
Medical Group.  Following a restructuring of that group as Siemens "Healthcare
Sector" he became Division Compliance Officer for Healthcare at SLC.  (JA A-9,
¶10).

Shortly after he started at SLC, Liu began encountering and confronting a
culture within Siemens' Chinese healthcare business of evading and
circumventing the anti-corruption due diligence systems and controls required by
the FCPA and Siemens' 2008 Plea Agreement.  (JA A-10, ¶ 11).

The amended complaint sets forth in substantial detail that senior
executives, compliance officers and legal officers of Siemens AG and its
subsidiary knowingly allowed Siemens' due diligence and anti-corruption internal
controls to be evaded and deliberately ignored numerous "red flags" that should
reasonably have alerted them to an extremely high probability that: (a) bribes were
being paid to Chinese officials in connection with Siemens' sale of multi-million
dollar medical imaging equipment to public hospitals in China and North Korea;
and (b) Siemens' employees were complicit in such a bribery scheme by
knowingly submitting inflated bids to Chinese public hospitals  at prices that far
exceeded the amount that Siemens expected to be paid. *See, e.g.,* (JA A-10, ¶ 13).

Mr. Liu consistently objected to and tried to remedy this systemic evasion of Siemens' due diligence systems. *Id.*

During September and October 2010 Liu uncovered incontrovertible evidence that Siemens was submitting intentionally inflated bids for many of the multi-million dollar medical imaging equipment sales it made to public hospitals in China as part of a "kickback" scheme. (JA A-44 to A-50, ¶¶133-155 ). On October 26, 2010, Liu met with Stephan Mueller, Siemens' CFO for Healthcare in China, at Mueller's office in Shanghai. Am. Compl., . (JA A-49 to A-50, ¶ 153-154). Liu provided Mueller with spreadsheets showing the substantial price deviations on the transactions for which he had been able to obtain documentation as of that date. *Id.*

On November 12, 2010, two weeks after making this disclosure, Mr. Liu was summarily suspended from his position, instructed not to report to the office and given "early notice" that his contract would not be renewed upon its expiration three months later. (JA A-50 to A-53, ¶¶ 156-167).

On May 17, 2011, Liu filed a whistleblower disclosure with the United States Securities and Exchange Commission pursuant to 15 U.S.C. § 78u-6, detailing Siemens' Foreign Corrupt Practices Act internal control and bribery violations that he had uncovered and attempted to remedy. (JA A-53, ¶168).

8

This action contends that Siemens removed Mr. Liu from his position and terminated him in retaliation for his disclosures relating to the corruption and kickback scheme in violation of the anti-retaliation provision of the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u-6(h)(1).

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

The standard of review on the issues on this appeal is *de novo*. *Guippone v. BH S & B Holdings LLC,* 737 F.3d 221, 225 (2nd Cir. 2013) ("Our standard of review for both motions to dismiss and motions for summary judgment is de novo").

### POINT II

### DODD-FRANK WHISTLEBLOWER PROTECTION APPLIES TO OVERSEAS EMPLOYEES

The District's Court's first ground for dismissing this action was its holding that the anti-retaliation protection of Dodd–Frank does not extend to overseas employees. However, the language, context and SEC interpretations of Dodd-Frank's whistleblower provisions demonstrate that such protection does apply to

9

overseas employees of foreign companies, such as the Defendant, that voluntarily elect to subject themselves to United States securities laws in return for obtaining the benefits of having their securities listed on a U.S. stock exchange.

### A.    Siemens Voluntarily Subjected itself to U.S. Securities Laws Including Dodd-Frank

Siemens voluntarily elected to have a class of its securities publicly listed on the New York Stock Exchange and thereby voluntarily subjected itself to – and undertook to comply with – United States securities laws. Amongst these laws, the Securities Exchange Act of 1934, as amended by FCPA, together with implementing rules and regulations of the SEC, prohibit Siemens from engaging in corrupt transactions with foreign officials and require that it file accurate financial statements for itself and its wholly-owned subsidiaries. *See, e.g.,* 15 U.S.C.A. §§ 78m and 78dd-1 *et seq.,* 17 C.F.R. § 240.13b2-1.

Also amongst the securities laws to which Siemens voluntarily subjected itself is the Anti-Retaliation Provision of Dodd-Frank. Dodd-Frank amended the Securities Exchange Act to, *inter alia*, prohibit companies from retaliating against their employees for a range of whistleblowing activities related to violations by their employers of the U.S. securities laws. 15 U.S.C. § 78u-6(h)(1).

### B.    Congress Intended Anti-Retaliation Protection to Extend to Overseas Employees

10

It is clear from the context and statutory framework of Dodd-Frank that Congress intended its anti-retaliation coverage to extend to overseas employees of U.S.-listed companies.  Congress enacted Dodd–Frank in the wake of the 2008 financial crisis and the Anti-Retaliation Provision of Dodd–Frank is one component of the Act's comprehensive reform of the U.S. financial regulatory system.  *Asadi v. G.E. Energy (USA), L.L.C.*, 2013 WL 3742492, 2 (5th Cir. 2013). In this context, the plain language of the statute contains very broad language that includes all employees, both foreign and domestic.  Section 21F(h)(1)(A) of Dodd Frank expressly prohibits <u>any</u> employer ("[n]o employer shall ...) from retaliating against "a whistleblower" and provides that any "individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C)." 15 U.S.C. § 78u-6(h)(1).

Dodd-Frank gave authority to the SEC to enact implementing regulations relating to the whistleblower provisions.  In both its final regulations, and the accompanying commentary, the SEC made clear that it has interpreted the statute to include overseas employees within the definition of "whistleblower."  Thus, in its rules containing the eligibility criteria for a whistleblower to be entitled to a

11

bounty award under the statute, the SEC specifically excluded any whistleblower who is "a member, officer, or employee of a foreign government, any political subdivision, department, agency, or instrumentality of a foreign government, or any other foreign financial regulatory authority." 17 C.F.R. § 240.21F-8(c)(2). Had the SEC not interpreted the statutory definition of a whistleblower to include foreign employees, this provision of the Rules would be entirely superfluous.

Similarly, in its comment to 17 C.F.R. § 240.21F-14, the SEC confirms its statutory interpretation that foreign employees are covered as whistleblowers: "We will coordinate with the IRS regarding the tax filing requirements that may be applicable to the payment of an award to a whistleblower who is a foreign national." 76 FR 34300-01, 2011 WL 2293084, 113, n. 370. Likewise, in its comment to 17 C.F.R. § 240.21F-4(b)(4)(iv) the SEC explained its decision not to exclude whistleblower who provide information obtained in violation of foreign laws:

> While the proposed rule does not extend the exclusion to information obtained or disclosed in violation of foreign law, we recognize that potential whistleblowers in foreign jurisdictions may have obligations to comply with applicable foreign laws. For instance, some foreign jurisdictions impose criminal penalties for unlawfully obtaining certain information or for unlawfully disclosing certain information to authorities outside their borders.

12

76 FR 34300-01, 2011 WL 2293084, 51, n. 181 (emphasis added).

Hence, in its rules and commentary the SEC has clearly stated its statutory interpretation that the term "whistleblower" includes persons located overseas.[2] The SEC's rules interpreting the statute are entitled to *Chevron* deference and therefore reinforce the conclusion that Congress intended the anti-retaliation protection to extend to overseas employees. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984) ("the question for the court [in reviewing an agency interpretation] is whether the agency's answer is based on a permissible construction of the statute").

The District Court acknowledged that "a person outside the United States may be a 'whistleblower' under Dodd-Frank" but nevertheless asserted that this "does not compel the conclusion [that Liu] is protected by the Anti-Retaliation Provision" of Dodd-Frank (JA A-63). However, it is submitted that the District Court's reasoning was erroneous and that, regardless of whether Congress intended the definition of "whistleblower" for anti-retaliation purposes to be

_____

[2]    In fact, the SEC has continuously reinforced its interpretation that foreign persons are eligible to be whistleblowers by accepting substantial numbers of whistleblower complaints from overseas whistleblowers.  Indeed, according to Appendix C of the Annual Report of the Dodd-Frank Whistleblower Program for Fiscal Year 2012, the SEC reported that 10.8% of all whistleblower submissions came from abroad. http://www.sec.gov/about/offices/owb/annual-report-2012.pdf

broader than the definition of that term for anti-retaliation purposes (*See* Point IV

*infra*), there is no statutory support whatsoever for arbitrarily assigning a narrower

definition to the term "whistleblower" for anti-retaliation purposes. Indeed, one of

the primary purposes of the Anti-Retaliation Provision was to protect SEC

whistleblowers from retaliation and the SEC rules make clear that all such

whistleblowers are included within the Anti-Retaliation Provision. *See* 17 C.F.R.

§ 240.21F-2(b)(1)(iii) ("For purposes of the [Dodd-Frank] anti-retaliation

protections ... you are a whistleblower if: (i) You possess a reasonable belief that

the information you are providing relates to a possible securities law violation ...

and (ii) You provide that information [to the SEC] in a manner described in

[Dodd-Frank]"). While, as the District Court noted, the SEC's implementing rules

provide that the Anti-Retaliation Provision is not limited to those who actually

qualify for a bounty, there is nothing in either the rules or the statute itself which

would support excluding any person who qualified as a whistleblower under the

bounty provision. This, by definition, therefore includes overseas whistleblowers.

The District Court's decision relied heavily on *Morrison v. National*

*Australia Bank Ltd.,* 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010).

However, *Morrison* is fundamentally distinguishable from the instant case because

it addressed the extraterritorial application of U.S. securities laws to foreign

securities transactions in securities that were not registered on a U.S. exchange. Although – as the District Court observed – the defendant in *Morrison* did have American Depository Receipts that traded on a United States Exchange, the securities at issue in the securities fraud case before the Supreme Court were a separate class of securities that were not registered on any U.S. exchange. 130 S.Ct. at 2876 ("petitioners ... all Australians, purchased [respondent's] Ordinary Shares").[3] Hence, unlike the defendant in this case – which voluntarily subjected itself to the full range of U.S. securities laws in return for the benefits of being listed on a U.S. exchange – the defendant in *Morrison* had not voluntarily subjected itself to U.S. securities laws for the securities transactions at issue in that case. In other words, the core jurisdictional nexus that exists here was entirely absent in *Morrison*. Indeed, *Morrison* itself reiterated that Section 10(b) of the Securities Exchange Act applied to all transactions in securities listed on domestic exchanges. 130 S. Ct. at 2884 ("It is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies").

The District Court also relied in its decision upon Section 929P of Dodd-

---

[3]     In a footnote the Supreme Court noted that "Robert Morrison, an American investor in National's ADRs, also brought suit, but his claims were dismissed by the District Court because he failed to allege damages." 130 S.Ct. at 2876, n. 1.

Frank, 15 U.S.C. § 78aa(b), which amended the Securities Exchange Act to

provide U.S. district courts with extraterritorial jurisdiction over an action brought

or instituted by the SEC alleging a violation of the anti-fraud provisions of the

Exchange Act.  The District Court reasoned that "[t]his provision would be quite

superfluous if the rest of the Dodd-Frank Act already applied extraterritorially."

(JA A-62) (internal quotations omitted)  However, it is submitted that precisely the

opposite is true: by expressly extending extraterritorial jurisdiction for SEC

enforcement actions – and concurrently providing anti-retaliation whistleblower

protection to whistleblowers who provide information to the SEC that may be used

in such enforcement actions -- Congress evidenced a clear intent to protect

whistleblowers located overseas.  Hence, in this case by specifically providing for

extraterritorial jurisdiction in a related section of the statute, Congress clearly

evidenced its intention to protect SEC whistleblowers located abroad.

   Indeed, the District Court's holding that employees located overseas cannot

be whistleblowers makes no logical sense.  As noted above, Congress enacted the

whistleblower provisions in general – including the anti-retaliation protection

afforded to whistleblowers – as one component of the Act's comprehensive reform

of the U.S. financial regulatory system.  It is designed to encourage employees

with knowledge of violations of U.S. securities laws to come forward so that these

16

violations can either be remedied internally or dealt with by the SEC.  Hence, it

defies logic to assert that, given the global nature of the largest companies

publicly-traded in the United States, Congress intended that a whistleblower's

eligibility for protection should somehow be determined by whether he or she

worked out of an office in New York or London.  Indeed, such an interpretation

would perversely incentivize global companies to move all of their compliance

and other staff with access to information regarding potential securities violations

to overseas offices in order to deprive them of eligibility for SEC bounties and

anti-retaliation protection.  Regardless of whether or not such an outcome would

be required for foreign companies that do not elect the benefits of listing on a

United States exchange, for those foreign companies that do so elect there is

nothing unfair or overreaching about subjecting them to the Dodd-Frank Anti-

Retaliation Provision contained in the Securities Exchange Act -- the statute that

forms the core of the United States securities laws.

Accordingly, it is submitted that the Court should give deference to the

SEC's interpretation of Dodd-Frank and hold that Dodd-Frank's Anti-Retaliation

Provision applies to overseas employees of foreign companies, such as Siemens,

that voluntarily elect to subject themselves to United States securities laws in

return for obtaining the benefits of having their shares listed on a U.S. stock

17

exchange.

## POINT III

### PLAINTIFF ENGAGED IN PROTECTED ACTIVITY UNDER DODD-FRANK ENTITLING HIM TO ANTI-RETALIATION PROTECTION

The District Court acknowledged that "[t]he portion of the Anti–Retaliation Provision that Liu relies on protects employees who are retaliated against for making disclosures 'required or protected' under the Sarbanes–Oxley Act" but then proceeded to hold that Liu's disclosures of FCPA violations did not qualify as protected under the SOX whistleblower-protection provision. (JA A-64) The District Court based this holding on two separate rationales. First, it held that because overseas employers cannot file SOX proceeding under the Department of Labor, Liu's case failed this "second" level of extraterritoriality analysis regardless of whether the Dodd-Frank Anti-Retaliation Provision generally applied to overseas employees. Second, the District Court ruled that the SOX Anti-Retaliation Provision does not protect employees who complain about FCPA violations. As set forth below, both of these rationales are erroneous and Liu did engage in protected activity.

## A.    Overseas Employees Who Engage in a Category of "Disclosures"

18

**Protected by SOX Are Entitled to Dodd-Frank Protection Regardless of Whether SOX Itself Extends Extraterritorially**

The District Court reasoned that, even if Dodd-Frank's Anti-Retaliation Protection generally applies extraterritorially to overseas employees, it is not available to employees if they are ineligible to file a SOX claim directly because SOX does not extend extraterritorially. However, such a duplicative, bi-level "case-within-a-case" extraterritoriality analysis is based on its misreading of the Dodd-Frank statute.

Dodd-Frank prohibits an employer from retaliating against a whistleblower "because of any lawful act done by the whistleblower [*inter alia*] in making disclosures that are required or protected under the Sarbanes–Oxley Act of 2002" 15 U.S.C. § 78u-6(h)(1)(A) (emphasis added). The criteria for triggering Dodd-Frank anti-retaliation protection is therefore whether the disclosures are of a type that is protected by SOX, not whether the specific employee is eligible to file a SOX proceeding based on his location domestically or overseas. In other words, under Dodd-Frank's anti-retaliation protection, the focus is on the type of conduct engaged in rather than the location of the whistleblower when engaging in that conduct.

To hold otherwise would entail an unwieldy, duplicative and illogical two-

19

pronged analysis of extraterritoriality. Under such an analysis, the first question would be whether Dodd-Frank applies extraterritorially to overseas employees – the answer to which as set forth in Point II, *supra*, is "yes." However, under such a reading of the statute, the Court's would then be required to engage in a second extraterritorial analysis of whether the employee would be entitled to bring a separate hypothetical administrative claim with the Department of Labor under SOX – regardless of whether the employee has brought or intends to bring such a claim. This analysis would lead to the absurd result that the protection of foreign whistleblowers would be determined by the statute the employer's misconduct violated, rather than the statute the employee elected to bring his claim under. Hence, an employee who asserted one of the other statutory protections entitling him to Dodd-Frank Anti-Retaliation protection, e.g. "[a]ny other law, rule or regulation subject to the jurisdiction of the [SEC]", 15 U.S.C. § 78u-6(h)(1)(A), would be entitled to bring a Dodd-Frank claim but another employee in the same overseas office claiming Dodd-Frank Anti-Retaliation protection by virtue of disclosures protected by SOX would not. It is submitted that such an analysis fundamentally misreads the anti-retaliation provision of Dodd-Frank.

**B.** **SOX Protects Employees of Public Companies Who Complain Internally About FCPA Violations**

20

As the District Court correctly held, "Section 806 [of SOX] protects employees who report mail fraud, wire fraud, bank fraud, securities fraud, violations of 'any rule or regulation of the Securities and Exchange Commission' or 'any provision of Federal law relating to fraud against shareholders.'" (JA A-65 to A-66) (citing 18 U.S.C. § 1514A]  However, the District Court then proceeded to analyze Liu's FCPA whistleblowing under the wrong prong of SOX protection: "FCPA violations could only conceivably fall within 'fraud against shareholders,' but Liu has alleged no intent to defraud shareholders."  (JA A-66) Contrary to the assertion of the District Court, Liu has never maintained that the FCPA violations about which he complained constituted "fraud against shareholders."  Rather, his reports fall into the category of protection afforded for reporting "violations of ... [a] rule or regulation of the Securities and Exchange Commission..." 18 U.S.C. § 1514A.

In complaining about FCPA violations, Mr. Liu complained about conduct which constituted a violation of both U.S. securities laws <u>and</u> the rules and regulations of the SEC that implemented them.  The conduct about which he complained included violations of the FCPA, which is enacted as 15 U.S.C.A. §§ 78dd-1, 78dd-2 and 78dd-3.  These the sections of the Securities Exchange Act prohibit a U.S. listed company and its subsidiaries from paying bribes to foreign

officials.

However, the conduct about which Liu complained also included the falsification of records relating to the transactions at issue, which was the mechanism through which Siemens inflated its bids in order to cover up the portion of the purchase price that was used to pay bribes. The falsified records reviewed by Liu included the bid documents and contracts entered into by Siemens (JA A-45, A-48, ¶¶ 137, 147) This violated SEC Rule 13b2-1 (17 C.F.R. § 240.13b2-1) – the record-keeping rule of the SEC (enacted to implement the FCPA) which provides that "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to Section 13(b)(2)(A) of the Securities Exchange Act."[4] The SEC has the power to enforce these provisions with respect to "issuers" including companies such as Siemens with securities that are publicly-traded on U.S. exchanges. 15 U.S.C. § 78u(d). Accordingly, such disclosures fall squarely within the SOX whistleblower provision, which protects whistleblowers who complain about conduct that violates "rules or regulations of the SEC."

---

[4]     "Congress' use of the term 'records' suggests that virtually any tangible embodiment of information made or kept by an issuer is within the scope of section 13(b)(2)(A) of the FCPA, such as tape recordings, computer print-outs, and similar representations." *S.E.C. v. World-Wide Coin Inv., Ltd.,* 567 F.Supp. 724, 748-49 (N.D.Ga.1983).

22

Moreover, it is well established that:

> [A] whistleblower need not show that the corporate
> defendant committed fraud to prevail in her retaliation
> claim under § 1514A. The statute only requires the
> employee to prove that she "reasonably believe[d]" that
> the defendant's conduct violated [the enumerated
> provisions of] federal law.

*Guyden v. Aetna, Inc.*, 544 F.3d 376 (2d. Cir. 2008); *Sharkey v. J.P. Morgan
Chase & Co*, 805 F.Supp.2d 45, 2011 WL 3663401 (S.D.N.Y. 2011) (RWS) ("In
order to state a whistleblower claim under SOX, a plaintiff need not show an
actual violation of the law, nor must a plaintiff cite a particular statute that he
believed was being violated.") (internal quotations omitted).  Here, the amended
complaint asserts that Mr. Liu had such a reasonable belief.  *See, e.g.,* (JA A–13,
A-24, A-29, A-46, ¶¶ 19, 61, 81, 141).

The only authority cited by the District Court for its holding that SOX does
not protect whistleblowers who complain about FCPA violations is *In re Gupta*,
Case No. 2010-SOX-54, 2011 WL 121916, at *5 (Dep't of Labor Jan. 7, 2011).
However, that decision contains no analysis whatsoever and, as set forth above, is
plainly contrary to the language of the SOX anti-retaliation provision itself.
Moreover, it was issued by an Administrative Law Judge rather than the
Administrative Review Board which is the highest level of adjudicative tribunal

23

for SOX cases at the Department of Labor.  Accordingly, it should be disregarded by this Court.

## POINT IV

### DODD-FRANK DOES NOT REQUIRE AN EMPLOYEE TO DISCLOSE INFORMATION TO THE SEC BEFORE BEING ELIGIBLE FOR DODD–FRANK ANTI-RETALIATION PROTECTION

The District Court in its decision noted that there was a split of authority as to whether an employee must first disclose information to the SEC before being eligible for Dodd–Frank Anti-Retaliation protection.  However, because it had ruled that this action must be dismissed for other reasons, the District Court declined to reach this issue on Siemens' motion to dismiss.  (JA A-12 to A-13)  Liu asks that this Court address the issue and holds that Dodd-Frank contains no such requirement.

The Fifth Circuit recently issued its decision in *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620 (5th Cir 2013) in which it became the first court in the country to narrowly construe the definition of "whistleblower" contained in the Dodd–Frank Anti-Retaliation Provision to protect only whistleblowers who had first reported the violation to the SEC.  The Fifth Circuit's *Asadi* decision rejected the interpretation of the whistleblower provision adopted by the SEC in its

24

implementing regulations and the analysis adopted by all five District Courts that

had previously considered the issue. *See Murray v. UBS Sec., LLC,* 12 CIV. 5914

(JMF), 2013 WL 2190084 (S.D.N.Y. May 21, 2013)*; Egan v. TradingScreen, Inc.,*

No. 10 Civ. 8202(LBS), 2011 WL 1672066, at \*4–5 (S.D.N.Y. May 4, 2011);

*Kramer v. Trans-Lux Corp.*, No. 3:11CV1424 (SRU), 2012 WL 4444820, at \*4

(D.Conn. Sept.25, 2012); *Nollner v. S. Baptist Convention, Inc.,* 852 F.Supp.2d

986, 994 n. 9 (M.D.Tenn.2012); *Genberg v. Porter,* No. 11 Civ.

2434(WYD)(MEH), 2013 WL 1222056, at \*10 (D.Colo. Mar. 25, 2013).

Liu submits that *Asadi* was wrongly decided and that this Court should

adopt the better-reasoned analysis of the court in *Murray v. UBS Securities*, LLC

2013 WL 2190084, 7 (S.D.N.Y. 2013) (JMF) and the SEC in its implementing

rules.   Notably, the two courts now have considered the issue since *Asadi* have

also both rejected the reasoning of *Asadi* and instead given deference to the SEC's

interpretation. *Rosenblum v. Thomson Reuters (Markets) LLC*, --- F.Supp.2d ---,

2013 WL 5780775, \*4 (S.D.N.Y. Oct 25, 2013) (NO. 13 CIV. 2219 SAS)*;*

*Ellington v. Giacoumakis*, --- F.Supp.2d --- , 2013 WL 5631046, \*2 (D. Mass. Oct

16, 2013) (NO. CIV.A. 13-11791-RGS).

Dodd-Frank gave authority to the SEC to issue regulations implementing

the whistleblower provisions. 15 U.S.C. § 78u-6(j).  The SEC's Rule 21F–2(b) (1)

provides that:

> For purposes of the anti-retaliation protections afforded
> by Section 21F(h)(1) of the Exchange Act (15 U.S.C.
> 78u–6(h)(1)), you are a whistleblower if:
>
> (I) You possess a reasonable belief that the information
> you are providing relates to a possible securities law
> violation (or, where applicable, to a possible violation of
> the provisions set forth in 18 U.S.C. 1514A(a)) that has
> occurred, is ongoing, or is about to occur, and;
>
> (ii) You provide that information in a manner described
> in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C.
> 78u–6(h)(1) (A)).
>
> (iii) The anti-retaliation protections apply whether or not
> you satisfy the requirements, procedures and conditions
> to qualify for an award.

17 C.F.R. § 240.21F–2(b)(1).  In its comments to the rule, the SEC explained

further that:

> [t]he second prong of the Rule 21F–2(b) (1) standard
> provides that, for purposes of the anti-retaliation
> protections, an individual must provide the information
> in a manner described in Section 21F(h)(1)(A). This
> change to the [proposed] rule reflects the fact that the
> statutory anti-retaliation protections apply to three
> different categories of whistleblowers, *and the third
> category includes individuals who report to persons or
> governmental authorities other than the Commission."*

SEC Securities Whistleblower Incentives and Protections, 76 Fed.Reg. 3430001,

at *34304, 2011 WL 2293084 (2011) (emphasis added).

26

As the court therefore found in *Murray*, "[o]n the SEC's view of the Act ...

the anti-retaliation provision's protections extend to those who make disclosures

that are protected under the Sarbanes–Oxley Act, whether or not the disclosures

were made to the SEC itself. The question thus arises whether the SEC's

interpretation warrants deference under the familiar two-step inquiry of *Chevron*

*U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)."

*Murray* at *4.  At step one of the *Chevron* inquiry, the Court must ask "whether

Congress has directly spoken to the precise question at issue. If the intent of

Congress is clear, that is the end of the matter; for the court, as well as the agency,

must give effect to the unambiguously expressed intent of Congress." *Id.* at

842–43. If, however, "the statute is <u>silent or ambiguous</u> with respect to the specific

issue," the Court proceeds to step two, asking "whether the agency's answer is

based on a permissible construction of the statute." *Id.* at 843 (emphasis added).

"If the agency interpretation is reasonable, then [a court] must defer to it." *Id.*

Moreover, "[t]he plainness or ambiguity of statutory language is determined by

reference to the language itself, the specific context in which that language is

used, and the broader context of the statute as a whole." *Virgilio v. City of N.Y.,*

407 F.3d 105, 112 (2d Cir.2005) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337,

341 (1997)).

27

The *Murray* court applied the *Chevron* analysis and "concluded that deference to the SEC's rule is warranted." It explained that "[an] ambiguity arises from the tension between Section 78u–6(a)(6), which limits the definition of "whistleblower" to one who makes a disclosure to the SEC, and Section 78u–6(h)(1)(A) (iii), which contemplates a broader scope of protection." The court also noted the same ambiguity in *Egan*: "[A] literal reading of the definition of the term 'whistleblower' in 15 U.S.C. § 78u–6(a)(6), requiring reporting to the SEC, would effectively invalidate § 78u–6(h)(1)(A)(iii)'s protection of whistleblower disclosures that do not require reporting to the SEC." *Egan v. TradingScreen, Inc.*, 2011 WL 1672066, 4 (S.D.N.Y.) (S.D.N.Y.,2011)

Notably, the defendants in *Murray* argued for precisely the same statutory interpretation as the Fifth Circuit adopted in *Asadi, i.e.* that the protections of Section 78u–6(h)(1)(A) come into play only after a person reports information to the SEC, at which point that person is protected from retaliation not only for the report to the SEC, but also for other steps such a whistleblower might take to further compliance with the law. However, as the *Murray* court held:

> No doubt this reading of the two statutory provisions is permissible, but as *Egan, Nollner, Kramer,* and *Genberg* make clear, it is by no means mandatory. Instead, as Judge Sand explained in *Egan,* Section 78u–6(h)(1)(A)(iii) may also be viewed "as a narrow

28

exception to [Section] 78u–6(a)(6)'s definition of a whistleblower as one who reports to the SEC." 2011 WL 1672066, at *5. On this view of the two provisions, to state a claim under Section 78u–6(h)(1)(A), a plaintiff "must *either* allege that his information was reported to the SEC, *or* that his disclosures fell under the four categories of disclosures delineated by [Section] 78u–6(h)(1)(A)(iii) that do not require such reporting: those under the Sarbanes–Oxley Act, the Securities Exchange Act, 18 U.S.C. § 1513(e), or other laws and regulations subject to the jurisdiction of the SEC." *Id.* (emphasis added).

The existence of these "competing, plausible interpretations" of the statutory provisions compels the conclusion that "the statutory text is ambiguous in conveying Congress's intent." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 120 (2d Cir.2007); see, e.g., PDK Labs. Inc. v. U.S. DEA, 362 F.3d 786, 796 (D.C.Cir.2004) (explaining that simply because a statute "is susceptible of one construction does not render its meaning plain if it is also susceptible of another, plausible construction").... It also compels the conclusion, at step two of the *Chevron* inquiry, that the SEC's interpretation is a reasonable one. After all, its rule is consistent with the interpretation of the statutory provisions put forth by *Egan, Nollner, Kramer,* and *Genberg:* that Section 78u–6(h)(1)(A)(iii) provides a narrow exception to Section 78u–6(a)(6)'s definition of a whistleblower as one who reports to the SEC, and protects internal disclosures protected by the Sarbanes–Oxley Act and the 1934 Act.

The *Murray* court therefore held that "because the SEC's rule clarifies an

ambiguous statutory scheme the SEC was charged with enforcing and reflects the

29

considerable experience and expertise that the agency has acquired over time with respect to interpretation and enforcement of the securities laws, this Court defers to the SEC's interpretation." *Murray* at *7.

Accordingly, Liu submits that this Court should also defer to the SEC's interpretation and hold that Dodd-Frank does not require an employee to disclose information to the SEC before being eligible for Dodd–Frank Anti-Retaliation protection.

## CONCLUSION

For all of the foregoing reasons, Liu requests that the Court: (1) reverse the decision of the District Court and deny the motion by the Defendant to Dismiss this action pursuant to Fed. R. Civ. P. 12(B)(6); and (2) remand this proceeding to the District Court for further proceedings consistent with the Court's decision.

Dated:     New York, New York
           January 7, 2014

                         KAISER SAURBORN & MAIR, P.C.
                         Attorneys for Plaintiff-Appellant,
                          Meng-Lin Liu


                         By:__/s/ David N. Mair_____
                              David N. Mair
                         111 Broadway, 18th Floor
                         New York, New York 10006
                         Tel:  (212) 338-9100
                         Fax: (212) 338-9088

30

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because the brief contains 6,405 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in Times New Roman 14 Point Font.

Dated:       New York, New York
             January 7, 2014

                          KAISER SAURBORN & MAIR, P.C.
                          Attorneys for Plaintiff-Appellant,
                           Meng-Lin Liu


                          By:__/s/ David N. Mair_____
                               David N. Mair
                          111 Broadway, 18th Floor
                          New York, New York 10006
                          Tel:  (212) 338-9100
                          Fax: (212) 338-9088

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this January 7, 2014, a copy of the within Brief of Petitioner was sent via electronic filing, to counsel.


\_\_/s/ David N. Mair_____
David N. Mair