# 13-4385

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

LIU MENG-LIN,

Plaintiff-Appellant,

v.

SIEMENS AG,

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of New York

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE* IN SUPPORT OF THE APPELLANT

ANNE K. SMALL
General Counsel

MICHAEL A. CONLEY
Deputy General Counsel

WILLIAM K. SHIREY
Assistant General Counsel

STEPHEN G. YODER
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532 (Yoder)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iv

STATEMENT OF THE ISSUE.................................................................1

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION
    AND SUMMARY OF ITS POSITION ........................................................2

STATEMENT OF THE CASE..................................................................5

A.    The securities laws recognize that internal company reporting by
    employees and others is important for deterring, detecting, and
    stopping unlawful conduct that may harm investors.......................................5

B.    By providing new incentives and protections for individuals to
    engage in whistleblowing activity, the Dodd-Frank whistleblower
    program enhances the existing securities-law enforcement scheme,
    including internal company reporting. ..........................................................9

    1.    The Commission carefully calibrated the rules implementing
        the monetary award component of the whistleblower
        program to ensure that individuals were not disincentivized
        from first reporting internally...............................................................10

    2.    Using its broad rulemaking authority, the Commission
        adopted a rule clarifying that employment retaliation is
        prohibited against individuals who engage in any of the
        whistleblowing activity described in Section
        21F(h)(1)(A)(iii)—including making internal reports at
        public companies of securities fraud violations. ..................................13

STANDARD OF REVIEW ....................................................................17

ARGUMENT ......................................................................................18

I.    Section 21F does not unambiguously demonstrate a Congressional
    intent to restrict employment anti-retaliation protection to *only*
    those individuals who provide the Commission with information
    relating to a violation of the securities laws. .................................................18

II.    In light of the ambiguity here, the Commission adopted a
       reasonable interpretation in Rule 21F-2(b)(1) that warrants judicial
       deference. ................................................................................................... 27

CONCLUSION ............................................................................................. 30

STATUTORY ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Adirondack Med. Ctr. v. Sebelius*, No. 12-5366, __ F.3d __,
    2014 WL 259678 (D.C. Cir. Jan. 24, 2014) ...................................27

*Asadi v. G.E. Energy (U.S.A.), L.L.C.*, 720 F.3d 620
    (5th Cir. 2013) ................................................. 22, 24, 25, *passim*

*Banko v. Appple, Inc.*, No. 13-02977, 2013 WL 6623913
    (N.D. Cal. Dec. 16, 2013)................................................................27

*Career College Assoc. v. Riley*, 74 F.3d 1265 (D.C. Cir. 1996).............................18

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984).....................................................................1, 17

*Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202,
    2011 WL 1672066 (S.D.N.Y. May 4, 2011) ...................................27

*Ellington v. Giacoumakis*, No. 13-11791, 2013 WL 5631046
    (D. Mass. Oct. 16, 2013) ...............................................................27

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    130 S. Ct. 3138 (2010).....................................................................7

*Genberg v. Porter*, 935 F. Supp. 2d 1094 (D. Colo. 2013) ....................................27

*Haekal v. Refco, Inc.*, 198 F.3d 37 (2d Cir. 1999)....................................................17

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154
    (2d Cir. 2012)....................................................................................21

*Kramer v. Trans-Lux Corp.*, No. 11 Civ. 1424, 2012 WL 4444820
    (D. Conn. Sept. 25, 2012)...............................................................27

*Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198 (1949) ...................................21

*McNamee v. Dept. of the Treasury*, 488 F.3d 100 (2d Cir. 2007) ...........................17

iv

**CASES (continued)**                                     **Page**

*Mei Juan Zhang v. Holder*, 672 F.3d 178 (2d Cir. 2012) ......................................... 18

*Meng-Lin Liu v. Siemens, A.G.*, No. 13 Civ. 317, 2013 WL 5692504
    (S.D.N.Y. Oct. 21, 2013) ...................................................................... 23

*Murray v. UBS Sec., LLC*, No. 12 Civ. 5914, 2013 WL 2190084
    (S.D.N.Y. May 21, 2013) ...................................................................... 27

*Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986
    (M.D. Tenn. 2012) ...................................................................... 27

*N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316
    (2d Cir. 2003) ...................................................................... 18

*Rosenblum v. Thomson Reuters (Markets) LLC*, No. 13 Civ. 2219,
    2013 WL 5780775 (S.D.N.Y. Oct. 25, 2013) ................................................. 27

*Sullivan v. Everhart*, 494 U.S. 83 (1990) ...................................................................... 18

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ...................................................... 17

*Wagner v. Bank of Am. Corp.*, No. 12-cv-00381, 2013 WL 3786643
    (D. Colo. July 19, 2013) ...................................................................... 27

*Zann Kwan v. Andalex Group* LLC, 737 F.3d 834 (2d Cir. 2013) .................. 23-24

**STATUTES**

Dodd-Frank Wall Street Reform and Consumer Protection Act,
    Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank")

    Dodd-Frank ........................................................................ 2, 9, 20, *passim*
    Dodd-Frank §748 ...................................................................... 20
    Dodd-Frank §922 ...................................................................... 2
    Dodd-Frank §924(a) .................................................................. 2

**STATUTES (continued)**            **Page**

Sarbanes-Oxley Act of 2002, Pub. L. No. 107, 116 Stat. 745
     ("Sarbanes-Oxley")

     Sarbanes-Oxley................................................................ 7, 14, 16, *passim*
     Sarbanes-Oxley §301............................................................................8
     Sarbanes-Oxley §307.................................................................7, 16, 20
     Sarbanes-Oxley §404, 15 U.S.C. §7262.............................................7
     Sarbanes-Oxley §806, 18 U.S.C. §1514A............................ 8, 16, 25, *passim*

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

     Section 10A, 15 U.S.C. §78j-1 ...........................................................6
     Section 10A(b), 15 U.S.C. §78j-1(b)..................................................6
     Section 10A(m), 15 U.S.C. §78j-1(m) ........................................14, 16
     Section 10A(m)(4), 15 U.S.C. §78j-1(m)(4) .............................8, 19
     Section 12, 15 U.S.C. §78*l* ...............................................................6
     Section 15(d), 15 U.S.C. §78*o* ..........................................................6
     Section 21F, 15 U.S.C. §78u-6............................................ 2, 4, 9, *passim*
     Section 21F(a), 15 U.S.C. §78u-6(a)..................................................10
     Section 21F(a)(6), 15 U.S.C. §78u-6(a)(6)........................ 19, 20, 26, *passim*
     Section 21F(b), 15 U.S.C. §78u-6(b) ..........................................10, 29
     Section 21F(c), 15 U.S.C. §78u-6(c) ...........................................10, 29
     Section 21F(d)(2)(A), 15 U.S.C. §78u-6(d)(2)(A) ...........................24
     Section 21F(h)(1), 15 U.S.C. §78u-6(h)(1) ......................... 1, 13, 15, *passim*
     Section 21F(h)(1)(A), 15 U.S.C. §78u-6(h)(1)(A)............... 1, 13, 14, *passim*
     Section 21F(h)(1)(A)(i),
         15 U.S.C. §78u-6(h)(1)(A)(i) .................................. 14, 15, 19, *passim*
     Section 21F(h)(1)(A)(ii),
         15 U.S.C. §78u-6(h)(1)(A)(ii)................................. 14, 15, 19, *passim*
     Section 21F(h)(1)(A)(iii),
         15 U.S.C. §78u-6(h)(1)(A)(iii) ............................... 14, 15, 18, *passim*
     Section 21F(h)(1)(B), 15 U.S.C. §78u-6(h)(1)(B) .................................14, 23
     Section 21F(h)(1)(B)(i),
         15 U.S.C. §78u-6(h)(1)(B)(i) ...............................................14
     Section 21F(h)(1)(C), 15 U.S.C. §78u-6(h)(1)(C) .................................. 14-15
     Section 21F(h)(2), 15 U.S.C. §78u-6(h)(2) ......................................24
     Section 21F(j), 15 U.S.C. §78u-6(j) ...................................................9

**STATUTES (continued)**                                              **Page**

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
    109 Stat. 737, §301 ...................................................................6

Section 23(h)(1) of the Commodity Exchange Act,
    7 U.S.C. §26(h)(1) ...............................................................20

18 U.S.C. §1341 ......................................................................8
18 U.S.C. §1343 ......................................................................8
18 U.S.C. §1344 ......................................................................8
18 U.S.C. §1348 ......................................................................8
18 U.S.C. §1513(e) ..............................................................14, 19
18 U.S.C. §1514A(a) .................................................................8
18 U.S.C. §1514A(a)(1)(C) ..........................................................9
18 U.S.C. §1514A(c)(1) .............................................................26
18 U.S.C. §1514A(c)(2)(C) .........................................................26

**RULES**

Rules under the Securities Exchange Act of 1934, 17 C.F.R. Part 240

    Rule 10A-3(b)(3), 17 C.F.R. §240.10A-3(b)(3)...............................8
    Rule 17a-5(h)(2), 17 C.F.R. §240.17a-5(h)(2) ..............................9
    Rule 21F-2(b)(1), 17 C.F.R. §240.21F-2(b)(1) ................... 4, 16, 27, *passim*
    Rule 21F-2(b)(1)(ii), 17 C.F.R. §240.21F-2(b)(1)(ii) ..................15
    Rule 21F-2(b)(2), 17 C.F.R. §240.21F-2(b)(2) ..........................15
    Rule 21F-4(b)(4), 17 C.F.R. §240.21F-4(b)(4) ..........................13
    Rule 21F-4(b)(7), 17 C.F.R. §240.21F-4(b)(7) .......................12, 29
    Rule 21F-4(c)(3), 17 C.F.R. §240.21F-4(c)(3)...........................12
    Rule 21F-6(a)(4), 17 C.F.R. §240.21F-6(a)(4)...........................12
    Rule 21F-6(b)(3), 17 C.F.R. §240.21F-6(b)(3) ..........................12

Rules under the Investment Advisers Act of 1940, 17 C.F.R. Part 275

    Rule 204A-1(a)(4), 17 C.F.R. §275.204A-1(a)(4) ........................9
    Rule 206(4)-2(a)(6)(ii), 17 C.F.R. §275.206(4)-2(a)(6)(ii)............9

Rule 38a-1 under the Investment Company Act of 1940,
    17 C.F.R. §270.38a-1(a)(4) ...............................................9

**RULES (continued)**                                          **Page**

Rule 3(d)(2), Standards of Professional Conduct for Attorneys
Appearing and Practicing Before the Commission in the
Representation of an Issuer, 17 C.F.R. §205.3(d)(2) .................................. 7-8

Procedures for Handling Retaliation Complaints under Section 806 of
the Sarbanes-Oxley Act of 2002, 29 C.F.R. Part 1980

29 C.F.R. §1980...................................................................................26
29 C.F.R. §1980.105............................................................................26
29 C.F.R. §1980.106-110 .....................................................................26

Fed. R. App. P. 29(a) .................................................................................2

**LEGISLATIVE MATERIALS**

H.R. 4173, 111th Cong. §7203(a) (as passed by House December 11,
2009) ......................................................................................................20

H.R. 4173, 111th Cong. §922(a) (as passed by Senate May 20, 2010)...................20

H.R. 4173, 111th Cong. §922(a) (conference base text) ........................................20

*SEC and Corporate Audits (Part 6): Hearings on Detecting and
Disclosing Financial Fraud Before Subcomm. on Oversight and
Investigations of the Comm. on Energy and Commerce*, 99th
Cong. 345 (1986) (testimony of John Shad, Chairman)................................6

**ADMINISTRATIVE MATERIALS**

*Kalkunte v. DVI Fin. Servs., Inc.*, ARB Case Nos. 05-139 & 05-140,
2009 WL 564738 (A.R.B. Feb. 27, 2009)....................................................26

Proposed Rules for Implementing the Whistleblower Provisions of
Section 21F of the Securities Exchange Act of 1934, 75 Fed.
Reg. 70488 (Nov. 17, 2010) .................................................... 3, 5, 10, *passim*

**ADMINISTRATIVE MATERIALS (continued)**                    **Page**

Report of Investigation Pursuant to Section 21(A) of the Securities
   Exchange Act of 1934 and Commission Statement on the
   Relationship of Cooperation to Agency Enforcement Decisions,
   2001 WL 1301408 (Oct. 23, 2001)....................................................5

Securities Whistleblower Incentives and Protections, 76 Fed. Reg.
   34300 (June 13, 2011) ........................................... 3, 4, 5, *passim*

**MISCELLANEOUS**

Orly Lobel, *Lawyering Loyalties: Speech Rights and Duties Within
   Twenty-First-Century New Governance*, 77 Fordham L. Rev.
   1245 (2009)......................................................................................17

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————————————————————————————

LIU MENG-LIN,

Plaintiff-Appellant,

v.

SIEMENS AG,

Defendant-Appellee.

———————————————————————————————————

On Appeal from the United States District Court
for the Southern District of New York

———————————————————————————————————

### BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
### *AMICUS CURIAE* IN SUPPORT OF THE APPELLANT

———————————————————————————————————

### STATEMENT OF THE ISSUE

The Securities and Exchange Commission ("Commission"), after notice-and-comment rulemaking, issued a rule to clarify an ambiguity in the whistleblower employment anti-retaliation provisions in Section 21F(h)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-6(h)(1). The Commission's rule interpreted the anti-retaliation protections to extend to any individual who engages in the whistleblowing activities described in Section 21F(h)(1)(A), irrespective of whether the individual makes a separate report to the Commission. Is the Commission's rule entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)?

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION
## AND SUMMARY OF ITS POSITION

The Commission—the agency principally responsible for the administration of the federal securities laws—submits this brief as *amicus curiae* pursuant to Fed. R. App. P. 29(a) to address an important securities law issue presented in this appeal.

Congress, in Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), amended the Exchange Act to add Section 21F, entitled "Securities Whistleblower Incentives and Protection."  Among other things, Section 21F directs the Commission to pay awards to individuals whose reports to the Commission about violations of the securities laws result in successful Commission enforcement actions, and prohibits employers from retaliating against individuals in the terms and conditions of their employment when they engage in certain specified whistleblowing activities.  (The award program and anti-retaliation protections are referred to collectively herein as "the whistleblower program.")

In May 2011, at Congress's direction, the Commission issued final rules "implementing the provisions of Section 21F[.]"  *See* Dodd-Frank §924(a). Throughout the rulemaking process, the Commission considered the "significant issue" of how to ensure that the whistleblower program does not undermine the

2

willingness of individuals to make whistleblower reports internally at their

companies before they make reports to the Commission.  Securities Whistleblower

Incentives and Protections ("Adopting Release"), 76 Fed. Reg. 34300 (June 13,

2011); *see also id.* at 34323 (explaining that an "objective" of the rulemaking was

"to support, not undermine, the effective functioning of company compliance and

related systems by allowing employees to take their concerns about possible

violations to appropriate company officials *first* while still preserving their rights

under the Commission's whistleblower program") (emphasis added); Proposed

Rules for Implementing the Whistleblower Provisions of Section 21F of the

Securities Exchange Act of 1934 ("Proposing Release"), 75 Fed. Reg. 70488 (Nov.

17, 2010) (same).  The Commission's final rules were carefully calibrated to

achieve this objective by providing "strong incentives" for individuals in

appropriate circumstances to report internally in the first instance.  Adopting

Release at 34301 ("[The final rules] incentivize whistleblowers to utilize their

companies' internal compliance and reporting systems when appropriate."); *id.* at

34322 (explaining that the Commission's "final rules seek to enhance the

incentives for employees to utilize their company's internal reporting systems").[1]

---

[1]     The Commission recognized that internal reporting is not always
appropriate, and the decision whether to do so (either prior to reporting to the
Commission or at all) is best left for whistleblowers to determine based on the
particular facts and circumstances.  *See* Adopting Release at 34327 ("[W]e believe
that it is appropriate for us to provide significant financial incentives as part of the

One of those rules—Rule 21F-2(b)(1), 17 C.F.R. §240.21F-2(b)(1)—is at issue in this litigation.  The Commission has a strong programmatic interest in demonstrating that the rule's reasonable interpretation of certain ambiguous statutory language was a valid exercise of the Commission's broad rulemaking authority under Section 21F.  This interest arises for two related reasons.  *First*, the rule helps protect individuals who choose to report potential violations internally in the first instance (*i.e.*, before reporting to the Commission), and thus is an important component of the overall design of the whistleblower program.  *Second*, if the rule were invalidated, the Commission's authority to pursue enforcement actions against employers that retaliate against individuals who report internally would be substantially weakened.

---

whistleblower program to encourage employees and other insiders to report violations internally, while still leaving the ultimate decision whether to report internally to the whistleblower").  Among the considerations a whistleblower would likely consider are:  (i) whether the employer has an anonymous reporting system; (ii) whether the potential misconduct involves upper-level management; (iii) whether the misconduct is still ongoing and poses a risk of sufficiently significant harm to investors that immediate reporting to the Commission is more appropriate; and (iv) whether the employer may be prone to bad faith conduct such as the destruction of evidence.  *Id.* at 34326.

## STATEMENT OF THE CASE

**A.    The securities laws recognize that internal company reporting by employees and others is important for deterring, detecting, and stopping unlawful conduct that may harm investors.**

Companies' processes for the internal reporting of violations of law and other misconduct "play an important role in facilitating compliance with the securities laws."  Adopting Release at 34325; *accord id.* at 34324.  Among other things, these internal reporting processes can help companies to promptly identify, correct, and self-report unlawful conduct by officers, employees, or others connected to the company.  *See generally* Proposing Release at 70496.  In this way, "reporting through internal compliance procedures can complement or otherwise appreciably enhance [the Commission's] enforcement efforts . . . ."  Adopting Release at 34359 n.450; *see also* Report of Investigation Pursuant to Section 21(A) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions, 2001 WL 1301408, at *1 (Oct. 23, 2001) ("When businesses seek out, self-report and rectify illegal conduct, and otherwise cooperate with Commission staff, large expenditures of government and shareholder resources can be avoided and investors can benefit more promptly.").[2]

---

[2]    To be clear, as the Commission has advised, "while internal compliance programs are valuable, they are *not substitutes* for strong law enforcement."  Adopting Release at 34326 (emphasis added).

5

Recognizing the significant role that internal company reporting can play, Congress for nearly two decades has enacted a series of amendments to the securities laws to encourage, and in some instances to require, internal reporting of potential misconduct.  In 1995, Congress amended the Exchange Act to add Section 10A(b), entitled "Required Response to Audit Discoveries."  *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, §301. Section 10A(b) imposes a series of internal company disclosure obligations on a registered public accounting firm that, during the course of conducting an audit of a public company required by the Exchange Act, discovers that an illegal act connected to the company has occurred.[3]  Section 10A(b) describes a process of disclosure by the auditor to the Commission *after* the auditor's internal disclosures occur and certain other conditions are met, including a failure on the company's part to take an appropriate response.[4]

---

[3]     This brief uses the term "public company" to refer to a company with a class of securities registered under Section 12 of the Exchange Act and those required to file reports under Section 15(d) of that Act.

[4]     An early version of the legislative proposal that became Section 10A would have required auditors to report immediately to the Commission.  SEC Chairman John Shad testified before Congress at the time in opposition to such a reporting requirement.  *See SEC and Corporate Audits (Part 6): Hearings on Detecting and Disclosing Financial Fraud Before Subcomm. on Oversight and Investigations of the Comm. on Energy and Commerce*, 99th Cong. 345 (1986) ("[W]hy not give management an opportunity to respond to suspicions and take corrective action?").

6

In 2002, Congress enacted the Sarbanes-Oxley Act ("Sarbanes-Oxley"), Pub. L. No. 107-204, 116 Stat. 745, in response to "a series of celebrated accounting debacles"[5] involving companies such as Enron and WorldCom.  As part of Sarbanes-Oxley, Congress enacted several additional provisions related to the internal company reporting of wrongdoing.[6]  In Section 307, for example, Congress directed the Commission to issue rules requiring attorneys appearing and practicing before the Commission in the representation of public companies "to report evidence of a material violation" of the securities laws or any "breach of fiduciary duty or similar violation by the company or any agent thereof" to specified company officials.  These attorneys are not required to make reports to the Commission and, indeed, may often be precluded from doing so as a result of their ethical obligations to their clients.[7]  Similarly, Sarbanes-Oxley added

---

[5]     *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3147 (2010).

[6]     A principal aim of Sarbanes-Oxley was to promote the establishment of robust internal corporate governance mechanisms and processes that could promptly identify and remedy violations.  *See, e.g.*, Sarbanes-Oxley §404, 15 U.S.C. §7262 (requiring internal compliance systems and an annual audit by outside auditors).

[7]     Only in limited situations—generally where it is "necessary" to report to the Commission to prevent a securities law violation that will cause substantial financial injury, or to correct past violations of similar severity where the attorney's services were used—*may* attorneys report evidence of a material violation to the Commission.  17 C.F.R. §205.3(d)(2).  But even when such disclosure to the Commission is permitted, an attorney will typically need to report

Exchange Act Section 10A(m)(4), which required the Commission, by rule, to direct that national securities exchanges and national securities associations require that audit committees of listed companies establish internal company procedures allowing employees and others to submit complaints "regarding accounting, internal accounting controls, or auditing matters," and to report anonymously "concerns regarding questionable accounting or auditing matters." *See* Sarbanes-Oxley §301; 17 C.F.R. §240.10A-3(b)(3).

Further, Section 806 of Sarbanes-Oxley (as later amended by Dodd-Frank) prohibited public companies, certain related persons or entities, and nationally recognized statistical rating organizations from engaging in employment retaliation against an employee who makes certain whistleblower disclosures concerning, among other things, securities fraud (18 U.S.C. §1348), bank fraud (*id.* §1344), mail fraud (*id.* §1341), wire fraud (*id.* §1343), or any violation of a Commission rule or regulation. 18 U.S.C. §1514A(a). The whistleblower disclosures are protected if they are made to "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to

internally *first* in order to satisfy the requirement that disclosure to the Commission is actually necessary.

investigate, discover, or terminate misconduct)," or to Congress or certain

governmental agencies (including the Commission).  *Id.* §1514A(a)(1)(C).[8]

**B.    By providing new incentives and protections for individuals to engage in whistleblowing activity, the Dodd-Frank whistleblower program enhances the existing securities-law enforcement scheme, including internal company reporting.**

As noted above, the Dodd-Frank Act of 2010 established the Commission's

new whistleblower program by adding Section 21F to the Exchange Act.  Section

21F expressly provided the Commission with authority "to issue such rules and

regulations as may be necessary or appropriate to implement the provisions of this

section consistent with the purposes of this section."  Exchange Act §21F(j).  In

May 2011, the Commission used that broad authority to adopt final rules

implementing both the monetary award and employment anti-retaliation aspects of

the whistleblower program.

---

[8]    The Commission has periodically adopted rules and regulations requiring internal reporting in certain circumstances either within or among regulated entities.  *See, e.g.*, 17 C.F.R. §270.38a-1(a)(4) (requiring the chief compliance officer of a mutual fund to report the details of any material compliance matters to the fund's board); 17 C.F.R. §240.17a-5(h)(2) (requiring the auditor of a broker-dealer to report material inadequacies to the chief financial officer);17 C.F.R. §275.204A-1(a)(4) (requiring each investment adviser to establish a code of ethics requiring supervised persons to report any violations thereof to the chief compliance officer); 17 C.F.R. §275.206(4)-2(a)(6)(ii) (requiring each investment adviser to obtain an internal control report with respect to custody of client assets maintained by the investment adviser or an affiliate).

**1.    The Commission carefully calibrated the rules implementing the monetary award component of the whistleblower program to ensure that individuals were not disincentivized from first reporting internally.**

Section 21F directs the Commission to pay awards, subject to certain limitations and conditions, to individuals who voluntarily provide the Commission with original information about a violation of the securities laws that leads to the successful enforcement of an action brought by the Commission that results in monetary sanctions exceeding $1,000,000. *See* Exchange Act §21F(a)-(c). Further, Section 21F affords the Commission discretion to set the amount of each award within a range of 10% to 30% of the total monetary sanctions collected. *Id.*

A principal challenge the Commission faced in crafting rules to implement the award program was ensuring that employees and others were not dissuaded from reporting internally due to the possibility of a monetary award. *See* Proposing Release at 70488 (expressing the Commission's desire "not to discourage whistleblowers who work for companies that have robust compliance programs [from] *first* report[ing] the violation to appropriate company personnel") (emphasis added). Were this to happen, the Commission recognized, the result could be a reduction in the "effectiveness of a company's existing compliance, legal, audit and similar internal processes for investigating and responding to potential violations of the Federal securities laws," which in turn could weaken

10

corporate compliance with the securities laws.  Proposing Release at 70488.[9]  The

Commission also recognized that "reporting through internal compliance

procedures can complement or otherwise appreciably enhance [its] enforcement

efforts in appropriate circumstances."  Adopting Release at 34359 n.450.

> For instance, the subject company may at times be better able to
> distinguish between meritorious and frivolous claims, and may make
> such findings available for the Commission.  This would be
> particularly true in instances where the reported matter entails a high
> level of institutional or company-specific knowledge and/or the
> company has a well-functioning internal compliance program in
> place.  Screening allegations through internal compliance programs
> may limit false or frivolous claims, provide the entity an opportunity
> to resolve the violation and report the result to the Commission, and
> allow the Commission to use its resources more efficiently.

*Id.*[10]

Accordingly, the Commission "tailored the final rules to provide

whistleblowers who are otherwise pre-disposed to report internally, but who may

---

[9]    *Cf.* Proposing Release at 70516 (explaining that "allow[ing] a company a
reasonable period of time to investigate and respond to potential securities laws
violations (or at least begin an investigation) prior to [an individual making a
report] to the Commission" is "consistent with the Commission's efforts to
encourage companies to create and implement strong corporate compliance
programs").

[10]    *See also* Proposing Release at 70516 (explaining that if the rules discouraged
individuals from first reporting internally, "the overall effect could be . . . a large
number of tips of varying quality—causing the Commission to incur costs to
process and validate the information"); *id.* (explaining that allowing individuals to
first report internally "provides a mechanism by which some of th[e] erroneous
[tips] may be eliminated before reaching the Commission").

also be affected by financial incentives, with additional economic incentives to

continue to report internally." *Id.* at 34360. The final rules seek to do this in three

principal ways:

➢ An individual "who reports internally can collect a whistleblower
award from the Commission if his internal report to the company or
entity results in a successful covered action." *Id.* at 34360 (discussing
Exchange Act Rule 21F-4(c)(3), 17 C.F.R. §240.21F-4(c)(3)).

➢ An individual "who *first* reports [pursuant] to an entity's internal
whistleblower, legal, or compliance procedures for reporting
allegations of possible violations of law and within 120 days reports
to the Commission" will be treated for purposes of an award as "if
[the submission to the Commission] had been made at the earlier
internal reporting date." Adopting Release at 34322 (emphasis added)
(discussing Exchange Act Rule 21F-4(b)(7), 17 C.F.R. §240.21F-
4(b)(7)). "This means that even if, in the interim, another
whistleblower has made a submission that caused the [Commission's]
staff to begin an investigation into the same matter, the [individual]
who had first reported internally will be considered the first
whistleblower who came to the Commission . . . ." Adopting Release
at 34322.

➢ "In addition, the final rules provide that when determining the amount
of an award, the Commission will consider as a plus-factor the
whistleblower's participation in an entity's internal compliance
procedures." Adopting Release at 34360 (discussing Exchange Act
Rule 21F-6(a)(4), 17 C.F.R. §240.21F-6(a)(4)).[11] The ability to adjust
an award upward based on internal reporting, the Commission
explained, would "allow [the Commission] to account for a reduced
monetary sanction … where the internal reporting potentially resulted
in a lower monetary sanction" because the company responded to the

---

[11] Relatedly, the Commission's rules also provide that "a whistleblower's
interference with internal compliance and reporting is a factor that can decrease the
amount of an award." Adopting Release at 34301, 34331 (discussing Exchange
Act Rule 21F-6(b)(3), 17 C.F.R. §240.21F-6(b)(3)).

internal report by engaging in remediation, self-reporting and cooperating with the Commission.  Adopting Release at 34360 n.455.

Beyond the tailored financial incentives that the Commission crafted to encourage individuals to report internally in appropriate situations, the final rules also require that officers, directors, trustees, and partners, as well as other specified personnel having internal audit or compliance responsibilities, must in certain instances *first* internally disclose the information about potential securities law violations and then wait 120 days before reporting the information to the Commission.  *See* Exchange Act Rule 21F-4(b)(4), 17 C.F.R. §240.21F-4(b)(4).  The Commission determined that this restriction was necessary to discourage "whistleblower submission[s] [that] might undermine the proper operation of internal compliance systems" that companies have established for responding to violations of law.  Adopting Release at 34317.

> **2.**     **Using its broad rulemaking authority, the Commission adopted a rule clarifying that employment retaliation is prohibited against individuals who engage in any of the whistleblowing activity described in Section 21F(h)(1)(A)(iii)—including making internal reports at public companies of securities fraud violations.**

Section 21F(h)(1) is designed to protect employees who engage in certain specified whistleblowing activities.  It does this in two significant ways.

*First*, subparagraph (A) seeks to *prevent* employment retaliation by placing employers on notice that they may not retaliate against employees who engage in

13

certain whistleblowing activity.  This is clear from the express terms of the

subparagraph, which is drafted as a prohibition directed to employers:

> (A)   In General.  No employer may discharge, demote, suspend,
> threaten, harass, directly or indirectly, or in any other manner
> discriminate against, a whistleblower in the terms and
> conditions of employment because of any lawful act done by
> the whistleblower—
>
>> (i)   in providing information to the Commission in
>> accordance with this section;
>>
>> (ii)   in initiating, testifying in, or assisting in any investigation
>> or judicial or administrative action of the Commission
>> based upon or related to such information; or
>>
>> (iii)   in making disclosures that are required or protected under
>> the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*),
>> this chapter [*i.e.*, the Exchange Act], including section
>> 78j-1(m) of this title [*i.e.*, Section 10A(m) of the
>> Exchange Act], section 1513(e) of Title 18, and any other
>> law, rule, or regulation subject to the jurisdiction of the
>> Commission.[12]

*Second*, subparagraphs (B) and (C) address the legal remedies that employees can

pursue against employers who have failed to heed subparagraph (A)'s

prohibition.[13]

---

[12]    As discussed *infra* 19-20, the disclosures listed in clause (iii) include the
internal company reporting disclosures described above in Part A.

[13]    Subparagraph (B) provides a cause of action in federal district court for any
"individual who alleges discharge or other discrimination in violation of
subparagraph (A)."  Exchange Act §21F(h)(1)(B)(i).  Subparagraph (C) provides
that relief in a successful action shall include reinstatement, two times back pay,

The Commission, employing its broad rulemaking authority under Section 21F, adopted two clarifying rules related to the prohibition in subparagraph (A). The first rule expressly stated that the Commission possesses authority to bring civil enforcement actions and proceedings against employers who violate the retaliation prohibition.  *See* Exchange Act Rule 21F-2(b)(2), 17 C.F.R. §240.21F-2(b)(2).

The second rule, Exchange Act Rule 21F-2(b)(1), clarified that the retaliation prohibition in subparagraph (A) protects any employee who engages in any of the whistleblowing activities specified in clauses (i)-(iii) above, irrespective of whether the employee separately reports the information to the Commission. *See* 17 C.F.R. §240.21F-2(b)(1)(ii).  It provides in pertinent part:

> For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:

> (ii)    You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

As the Commission explained in the adopting release, this rule reflects the fact that clause (iii) prohibits employers from retaliating against "individuals who report to persons or governmental authorities *other than the Commission*." Adopting Release at 34304 (emphasis in original).  In particular, clause (iii)

compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.  Exchange Act §21F(h)(1)(C).

prohibits employers from retaliating against employees who make the "disclosures

that are required or protected under the Sarbanes-Oxley Act" or the other securities

laws, including the internal company disclosures described above in Part A.  For

example:

> Disclosures that Sarbanes-Oxley Section 307 requires attorneys for
> the public company to make to the company's general counsel
> regarding potential evidence of a material violation of the securities
> laws or a breach of fiduciary duty by a corporate director;

> Disclosures to an audit committee pursuant to Section 10A(m) of the
> Exchange Act concerning "questionable accounting or auditing
> matters" at a public company; and

> Disclosures protected under Sarbanes-Oxley Section 806 to a
> supervisor or compliance official at a public company concerning
> possible securities fraud, wire fraud, bank fraud, or mail fraud.

Significantly, by clarifying that the prohibition on employment

retaliation extends to individuals who report internally in instances such as

these (irrespective of whether they have reported to the Commission), Rule

21F-2(b)(1) complements the overall goal of the whistleblower program

rulemaking to maintain incentives for individuals to first report internally in

appropriate circumstances.  In the adopting release, the Commission

recognized that the prohibition on employment retaliation would help

preserve these incentives for internal reporting, since "[e]mployees who

report internally in this manner will have anti-retaliation employment

protection to the extent provided for by [Section 21F(h)(1)(A)(iii)], which

incorporates the broad anti-retaliation protections of Sarbanes-Oxley Section

806." Adopting Release at 34325 n.223. *See generally* Orly Lobel,

*Lawyering Loyalties: Speech Rights and Duties Within Twenty-First-*

*Century New Governance*, 77 FORDHAM L. REV. 1245, 1250 (2009)

("[I]nternal protections are particularly crucial in view of research finding

that … employees are more likely to choose internal reporting systems.").

## STANDARD OF REVIEW

"The interpretation of a statute by a regulatory agency charged with its

administration is entitled to deference if it is a permissible construction of the

statute." *Haekal v. Refco, Inc.*, 198 F.3d 37, 41 (2d Cir. 1999). *See also United*

*States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("administrative

implementation of a particular statutory provision qualifies for *Chevron* deference

when it appears that Congress delegated authority to the agency generally to make

rules carrying the force of law, and that the agency interpretation claiming

deference was promulgated in the exercise of that authority"). Consideration of

whether an agency interpretation is permissible involves two steps. *First*, this

Court considers whether there is an "unambiguously expressed intent of Congress"

on "the precise question at issue." *McNamee v. Dept. of the Treasury*, 488 F.3d

100, 105 (2d Cir. 2007) (quoting *Chevron*, 467 U.S. at 842-43) (internal quotation

marks omitted). Ambiguity exists where two statutory provisions are "in

17

considerable tension," thereby affording the agency "discretion to resolve the apparent conflict." *Career College Assoc. v. Riley*, 74 F.3d 1265, 1271-72 (D.C. Cir. 1996); *accord N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 327-29 (2d Cir. 2003).

*Second*, this Court determines whether the agency's interpretation is reasonable, which means the interpretation is rational and not inconsistent with the statute. *See, e.g.*, *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990). To find an agency's interpretation rational, this Court "need not conclude that the agency construction was the only one it permissibly could have adopted" or "even the reading [this Court] would have reached if the question initially had arisen in a judicial proceeding." *Mei Juan Zhang v. Holder*, 672 F.3d 178, 183-84 (2d Cir. 2012) (internal quotation omitted).

## ARGUMENT

I.  **Section 21F does not unambiguously demonstrate a Congressional intent to restrict employment anti-retaliation protection to *only* those individuals who provide the Commission with information relating to a violation of the securities laws.**

Congress did not unambiguously limit the employment anti-retaliation protections in Section 21F(h)(1) to only those individuals who provide the Commission with information relating to a securities law violation. Rather, there is ambiguity on this issue given the considerable tension between clause (iii) of Section 21F(h)(1)(A), which as discussed above lists a broad array of

18

whistleblowing activity to entities and persons other than just the Commission, and Section 21F(a)(6), which defines "whistleblower."

To appreciate the significant tension between these two provisions, it is useful to first examine the language and structure of Section 21F(h)(1)(A).  As quoted in full *supra* 14, Section 21F(h)(1)(A) prohibits an employer from retaliating against a whistleblower:  (i) for "providing information to the Commission in accordance with this section"; (ii) for assisting in an investigation or action of the Commission "based upon or related to such information"; or (iii) for "making disclosures that are required or protected under" Sarbanes-Oxley, the Exchange Act, 18 U.S.C. §1513(e), "and any other law, rule, or regulation subject to the jurisdiction of the Commission."

As the quoted language makes evident, clauses (i) and (ii), together, protect individuals for whistleblowing to the Commission about securities law violations. But the anti-retaliation protection that clause (iii) affords reaches beyond just disclosures involving securities law violations and disclosures to the Commission. It covers, among other things, an employee's submission to a public company's audit committee about questionable accounting practices (including those questionable practices that do not rise to the level of a securities law violation) under Section 10A(m)(4) of the Exchange Act, or an in-house counsel's disclosure

19

under Section 307 of Sarbanes-Oxley about a potential breach of the CEO's

fiduciary duty.[14]

Yet, the interplay of Section 21F(h)(1)(A) with the definition of

"whistleblower" in Section 21F(a)(6) may suggest a different result. Section

21F(h)(1)(A) protects "a whistleblower in the terms and conditions of

employment," and Section 21F(a)(6) in turn defines a "whistleblower" as "any

individual who provides … information relating to a violation of the securities law

to the Commission." If Section 21F(a)(6)'s narrow whistleblower definition is

read as a limitation on the overall scope of Section 21F(h)(1)(A), the disclosures

protected under clause (iii) would be significantly restricted. Specifically, an

individual would be protected for making one of the whistleblower disclosures

identified in clause (iii) *only if* two preconditions are met:

---

[14]   The legislative history adds no clarity concerning Congress's intention in adding clause (iii) to Section 21F(h)(1)(A). Indeed, the provision was added relatively late in the Dodd-Frank legislative process; it was not included either in the original version of the bill that passed the House, *see* H.R. 4173, 111th Cong. §7203(a) (as passed by House December 11, 2009), or in the version of the bill that initially passed the Senate, *see* H.R. 4173, 111th Cong. §922(a) (as passed by Senate May 20, 2010). The language first appeared in the base conference committee draft that the Senate in May 2010 approved for use in the Dodd-Frank conference committee, *see* H.R. 4173, 111th Cong. §922(a) (conference base text), and it remained in the final version of the committee bill that the House and Senate subsequently approved. Notably, the nearly identical statutory provision of Dodd-Frank that authorized a whistleblower program for the Commodity Futures Trading Commission does not include language comparable to clause (iii). *See* Dodd-Frank §748 (enacting employment anti-retaliation protections as new section 23(h)(1) to the Commodity Exchange Act, codified at 7 U.S.C. §26(h)(1)).

20

(1)    the individual has separately submitted that same information to Commission, and

(2)    that information involves a securities law violation.

But this reading raises an immediate question:  If Congress had actually intended to protect only those "required or protected" disclosures that satisfy these two conditions, why would Congress craft clause (iii) to unnecessarily suggest that it protects a much broader class of disclosures than it actually does?  Surely Congress could have been more explicit and more direct if it in fact intended to protect only those disclosures that involve securities law violations, and only if the employee has made a separate disclosure to the Commission.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154, 163 (2d Cir. 2012) (rejecting "mechanical use of a statutory definition that would 'destroy one of the major purposes of' enacting the provision") (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)).

That Congress did not unambiguously intend such a result becomes apparent by considering the bizarre consequences that such a narrow reading produces. With one possible exception, clause (iii) becomes superfluous.  If an employer knows that an individual has made a disclosure listed in clause (iii), such as an internal report about a potential securities fraud violation, and the employer is also aware that the individual has provided the same information to the Commission, then as a practical matter the individual will be protected from retaliation under

21

clauses (i) and (ii). An employer will not be able to disaggregate the whistleblowing to the Commission from the internal whistleblowing so as persuasively to claim that any retaliation was solely in connection with the latter. Thus, where an employer knows that an individual has reported to the Commission, clauses (i) and (ii) would already sufficiently protect the individual from retaliation should the individual also wish to make the disclosures specified in clause (iii).

That leaves only one situation where clause (iii) might conceivably have independent utility—where the employer, unaware that the individual had already reported to the Commission, takes an adverse employment action against the employee for a disclosure listed in clause (iii). Although the Fifth Circuit has reasoned that this potential scenario saves clause (iii) from being superfluous under the narrow reading of Section 21F(h)(1)'s employment anti-retaliation protection, *Asadi v. G.E. Energy (U.S.A.), L.L.C.*, 720 F.3d 620, 627-28 (5th Cir. 2013), that is far from clear for two reasons. *First*, as discussed above, subparagraph (A) principally operates as a prohibition directed to employers; it seeks to *prevent* retaliation by placing employers on notice that they may not take adverse employment action against employees who engage in certain whistleblowing activity. But under the scenario posited by the *Asadi* court, clause (iii) would be utterly ineffective as a preventive measure. Put simply, because in this scenario

22

employers would not know that a report was made to the Commission, clause (iii) would have no appreciable effect in deterring employers from taking adverse employment action for internal reports or the other disclosures listed in clause (iii).

*Second*, it is unlikely that an employee who suffers an adverse employment action in this situation could even rely on clause (iii) to successfully pursue a private action against the employer under Section 21F(h)(1)(B).  Whether an individual's disclosures constitute a "protected activity" under the Fifth Circuit's narrow reading of clause (iii) would turn on whether the individual has made a separate disclosure to the Commission.  But if an employer is genuinely unaware that the employee has separately disclosed to the Commission, any adverse employment action that the employer takes would appear to lack the requisite retaliatory intent—*i.e.*, the intent to punish the employee for engaging in a protected activity.[15]  *Cf. Zann Kwan v. Andalex Group* LLC, 737 F.3d 834, 844 (2d Cir. 2013) (to establish employment retaliation claim, plaintiff must show "defendant's knowledge of the protected activity" and "a causal connection

---

[15]    As the district court below recognized, the alternative would be to construe the anti-retaliation provision to impose strict liability on an employer (*i.e.*, intent would not be an element of a retaliation claim).  *See Meng-Lin Liu v. Siemens, A.G.*, No. 13 Civ. 317, 2013 WL 5692504, at *7 (S.D.N.Y. Oct. 21, 2013).  But we are aware of no precedent for treating an employment anti-retaliation provision as a strict liability scheme.

between the protected activity and the adverse employment action") (internal quotation omitted).[16]

This examination of the relevant statutory language demonstrates, at a minimum, considerable tension and inconsistency within the text, thus revealing that Congress did not unambiguously express an intent to limit the employment anti-retaliation protections under Section 21F(h)(1) to only those individuals who report securities law violations to the Commission.

Although the Fifth Circuit reached a contrary conclusion in *Asadi*, the court's holding that the statutory language compels the narrow reading described above is based on a flawed understanding of the statutory scheme. The court approached Section 21F as though its sole purpose is "to require individuals to report information to the SEC to qualify as a whistleblower." *Asadi*, 720 F.3d at 630. But this fails to consider the role that Section 21F occupies within the broader securities-law framework, particularly the internal reporting processes that Congress has previously established. As discussed *infra* Part II, the Commission reasonably chose to interpret clause (iii) of Section 21F(h)(1)(A) against that

---

[16]     A further anomaly resulting from this interpretation is that the individual, in order to successfully maintain a retaliation claim, would be required to "out" himself as someone who reported information to the Commission. This conflicts with Congress's strong desire to shield a whistleblower's identity from public disclosure to the fullest extent possible. *See* Exchange Act §21F(h)(2) (confidentiality provisions); *see also id.* §21F(d)(2)(A) (permitting anonymous disclosures to the Commission).

24

broader securities-law framework, construing the statute to afford the same employment anti-retaliation protections for individuals regardless of whether they report to the Commission under the new procedures established by Section 21F or instead make the disclosures "required or protected" under the other provisions of the securities laws.

The Fifth Circuit also erroneously believed that its interpretation was necessary to avoid rendering the private cause of action under Sarbanes-Oxley Section 806, "for practical purposes, moot." *Asadi*, 720 F.3d at 628. The court, after observing that clause (iii) covers (among other things) the disclosures protected by Section 806, reasoned that "[i]t is unlikely … that an individual would choose to raise a [Sarbanes-Oxley] anti-retaliation claim instead of a Dodd-Frank whistleblower-protection claim" because: (i) Section 21F provides "for greater monetary damages because it allows for recovery of two times back pay, whereas [Section 806] provides for only back pay," and (ii) "the applicable statute of limitations is substantially longer for Dodd-Frank whistleblower-protection claims." *Id.* at 628-29.

But the Fifth Circuit ignored at least two countervailing advantages of a Sarbanes-Oxley Section 806 claim over a Dodd-Frank Section 21F claim:

> ➢ For individuals who want to avoid the burdens of pursuing the claim in court, including potential high litigation costs that they might bear if they do not prevail, actions under Section 806 may be an attractive option because the claims are heard (at least in the first instance) in an

25

administrative forum at the Department of Labor ("DOL").  Moreover, DOL assumes responsibility for investigating the retaliation claim and preparing the evidence for an administrative law judge's review.[17]

➢ Depending on the nature of the injury, a claim under Section 806 may afford a greater recovery.  Unlike Section 21F, Section 806 provides for "all relief necessary to make the employee whole" and for "compensation for any special damages."  18 U.S.C. §1514A(c)(1) & (c)(2)(C).  This language has been held to authorize compensation for emotional pain and suffering.[18]  Thus, individuals who have experienced minimal pay loss, but significant emotional injuries, may find Section 806 actions more attractive.

Finally, the Fifth Circuit expressed concern that any other reading of Section 21F "would read the words 'to the Commission' out of the definition of 'whistleblower' for purposes of the whistleblower-protection provision." *Asadi*, 720 F.3d at 628.  But applying the Section 21F(a)(6) definition of whistleblower to Section 21F(h)(1)(A) makes the phrase "to the Commission" in clause (i) and the similar reference in clause (ii) superfluous.  That either of two competing interpretations yields superfluous statutory language confirms that Congress did

---

[17]    DOL has delegated to its sub-agency the Occupational Safety and Health Administration ("OSHA") responsibility for receiving and investigating claims under Section 806.  *See generally* 29 C.F.R. §1980.  If OSHA finds that the employee was subjected to retaliation, it may order immediate reinstatement.  *Id.* §1980.105.  OSHA's findings are subject to a *de novo* hearing before an administrative law judge and review by DOL's Administrative Review Board.  *Id.* §§1980.106-110.

[18]    *See Kalkunte v. DVI Fin. Servs., Inc.*, ARB Case Nos. 05-139 & 05-140, 2009 WL 564738, at *13 (A.R.B. Feb. 27, 2009) (sustaining damages for "'pain, suffering, [and] mental anguish'" under Section 806).

not speak unambiguously on the issue. *See Adirondack Med. Ctr. v. Sebelius*, No. 12-5366, __ F.3d __, __, 2014 WL 259678, at *6 (D.C. Cir. Jan. 24, 2014) ("The canon [against surplusage] is particularly unhelpful when both interpretive outcomes lead to some sort of suplusage . . . .").

## II.    In light of the ambiguity here, the Commission adopted a reasonable interpretation in Rule 21F-2(b)(1) that warrants judicial deference.

By adopting Exchange Act Rule 21F-2(b)(1) to specify what persons are whistleblowers for purposes of the anti-retaliation provisions, the Commission revealed its view that Section 21F(h)(1)(A) is best read as an implied exception to the definition of whistleblower in Section 21F(a)(6). *See, e.g.*, *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202, 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011).[19] The Commission thus promulgated Exchange Act Rule 21F-2(b)(1) to clarify that, "[f]or purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act, you are a whistleblower if … [y]ou provide that information in a manner described in Section 21F(h)(1)(A)."

---

[19]    Several other district courts have also shared the Commission's reading of Section 21F(h)(1)(A). *Rosenblum v. Thomson Reuters (Markets) LLC*, No. 13 Civ. 2219, 2013 WL 5780775, at *3-5 (S.D.N.Y. Oct. 25, 2013); *Ellington v. Giacoumakis*, No. 13-11791, 2013 WL 5631046, at *2-3 (D. Mass. Oct. 16, 2013); *Murray v. UBS Sec., LLC*, No. 12 Civ. 5914, 2013 WL 2190084, at *3-7 (S.D.N.Y. May 21, 2013); *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106-07 (D. Colo. 2013); *Kramer v. Trans-Lux Corp.*, No. 11 Civ. 1424, 2012 WL 4444820, at *3-5 (D. Conn. Sept. 25, 2012); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 993-95 (M.D. Tenn. 2012). *But see Banko v. Appple, Inc.*, No. 13-02977, 2013 WL 6623913, at *2-3 (N.D. Cal. Dec. 16, 2013); *Wagner v. Bank of Am. Corp.*, No. 12-cv-00381, 2013 WL 3786643, at *4-6 (D. Colo. July 19, 2013).

In doing so, the Commission concluded "that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category [*i.e.*, clause (iii)] includes individuals who report to persons or governmental authorities *other than the Commission*."  Adopting Release at 34304. The Commission explained that, accordingly, the anti-retaliation protections will extend to, among others, employees of public companies who make certain disclosures internally to "a person with supervisory authority over the employee or such other person working for the employer who has authority to investigate, discover, or terminate misconduct."  *Id.*

The Commission's interpretation is reasonable because it resolves the statutory ambiguity in a manner that effectuates the broad employment anti-retaliation protections that clause (iii) contemplates.  The Commission's interpretation is also reasonable because, by ensuring that individuals who report internally first will not be potentially disadvantaged by losing employment anti-retaliation protection under Section 21F, it better supports a core overall objective of the whistleblower rulemaking—avoiding disincentivizing individuals from reporting internally first in appropriate circumstances.  By establishing parity between individuals who first report to the Commission and those individuals who first report internally, the Commission's rule avoids a two-tiered structure of anti-retaliation protections that might discourage some individuals from first reporting

28

internally in appropriate circumstances and, thus, jeopardize the benefits that can result from internal reporting, *supra* 5, 16-17.  The Commission's decision to adopt this interpretation was reasonable in light of its view, based on its experience and expertise, that if internal compliance and reporting procedures "are not utilized or working, our system of securities regulation will be less effective."  Proposing Release at 70500.[20]

Lastly, the Commission's interpretation was reasonable because it enhances the Commission's ability to bring enforcement actions when employers take adverse employment actions against employees for reporting securities law violations internally.  A contrary result that narrowly cabined this enforcement authority to only those situations where the employee has separately reported to the

---

[20]     Rule 21F-2(b)(1) also supports the whistleblower program by extending anti-retaliation protection to individuals who first report to designated authorities *other than the Commission*.  Section 21F(b) & (c) authorize awards to such individuals under certain circumstances when their information leads to successful "related actions" by the other designated authorities.  To facilitate this reporting, the Commission adopted Rule 21F-4(b)(7), under which individuals who first provide information to a designated authority and then within 120 days submit the same information to the Commission will be treated as though they reported to the Commission as of the date of the original report to the designated authority.  17 C.F.R. §240.21F-4(b)(7).  Rule 21F-2(b)(1) ensures that individuals who follow this reporting approach will not lose anti-retaliation protection during the period prior to their report to the Commission.

Commission would significantly weaken the deterrence effect on employers who might otherwise consider taking an adverse employment action.[21]

## CONCLUSION

For the foregoing reasons, this Court should defer to the Commission's rule and hold that individuals are entitled to employment anti-retaliation protection if they make any of the disclosures identified in Section 21F(h)(1)(A)(iii) of the Exchange Act, irrespective of whether they separately report the information to the Commission.

Respectfully submitted,

ANNE K. SMALL
General Counsel

MICHAEL A. CONLEY
Deputy General Counsel

WILLIAM K. SHIREY
Assistant General Counsel

/s/ Stephen G. Yoder
STEPHEN G. YODER
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532 (Yoder)

February 2014

---

[21]   The Commission lacks such authority under Sarbanes-Oxley Section 806.

30

## STATUTORY ADDENDUM:

## SECTION 21F(a)-(d), (h), (j)
## OF THE SECURITIES EXCHANGE ACT OF 1934,
## 15 U.S.C. §78u-6(a)-(d), (h), (j)

(a) Definitions.  In this section the following definitions shall apply:

(1) Covered judicial or administrative action.  The term "covered judicial or administrative action" means any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000.

(2) Fund.  The term "Fund" means the Securities and Exchange Commission Investor Protection Fund.

(3) Original information.  The term "original information" means information that--

> (A) is derived from the independent knowledge or analysis of a whistleblower;

> (B) is not known to the Commission from any other source, unless the whistleblower is the original source of the information; and

> (C) is not exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, unless the whistleblower is a source of the information.

(4) Monetary sanctions.  The term "monetary sanctions", when used with respect to any judicial or administrative action, means--

> (A) any monies, including penalties, disgorgement, and interest, ordered to be paid; and

> (B) any monies deposited into a disgorgement fund or other fund pursuant to section 308(b) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(b)), as a result of such action or any settlement of such action.

(5) Related action.  The term "related action", when used with respect to any judicial or administrative action brought by the Commission under the

securities laws, means any judicial or administrative action brought by an entity described in subclauses (I) through (IV) of subsection (h)(2)(D)(i) that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the Commission action.

(6) Whistleblower.  The term "whistleblower" means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission.

(b) Awards

(1) In general.  In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to--

(A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and

(B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

(2) Payment of awards.  Any amount paid under paragraph (1) shall be paid from the Fund.

(c) Determination of amount of award; denial of award

(1) Determination of amount of award

(A) Discretion.  The determination of the amount of an award made under subsection (b) shall be in the discretion of the Commission.

(B) Criteria.  In determining the amount of an award made under subsection (b), the Commission--

(i) shall take into consideration--

Addendum 2

(I) the significance of the information provided by the whistleblower to the success of the covered judicial or administrative action;

(II) the degree of assistance provided by the whistleblower and any legal representative of the whistleblower in a covered judicial or administrative action;

(III) the programmatic interest of the Commission in deterring violations of the securities laws by making awards to whistleblowers who provide information that lead to the successful enforcement of such laws; and

(IV) such additional relevant factors as the Commission may establish by rule or regulation; and

(ii) shall not take into consideration the balance of the Fund.

(2) Denial of award.  No award under subsection (b) shall be made--

(A) to any whistleblower who is, or was at the time the whistleblower acquired the original information submitted to the commission, a member, officer, or employee of--

(i) an appropriate regulatory agency;

(ii) the Department of Justice;

(iii) a self-regulatory organization;

(iv) the Public Company Accounting Oversight Board; or

(v) a law enforcement organization;

(B) to any whistleblower who is convicted of a criminal violation related to the judicial or administrative action for which the whistleblower otherwise could receive an award under this section;

(C) to any whistleblower who gains the information through the performance of an audit of financial statements required under the securities laws and for whom such submission would be contrary to

the requirements of section 10A of the Securities Exchange Act of 1934 (15 U.S.C. 78j-1); or

(D) to any whistleblower who fails to submit information to the Commission in such form as the Commission may, by rule, require.

(d) Representation

(1) Permitted representation.  Any whistleblower who makes a claim for an award under subsection (b) may be represented by counsel.

(2) Required representation

(A) In general.  Any whistleblower who anonymously makes a claim for an award under subsection (b) shall be represented by counsel if the whistleblower anonymously submits the information upon which the claim is based.

(B) Disclosure of identity.  Prior to the payment of an award, a whistleblower shall disclose the identity of the whistleblower and provide such other information as the Commission may require, directly or through counsel for the whistleblower.

. . .

(h) Protection of whistleblowers

(1) Prohibition against retaliation

(A) In general.  No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower--

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this

Addendum 4

chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

(B) Enforcement

(i) Cause of action.  An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C).

(ii) Subpoenas.  A subpoena requiring the attendance of a witness at a trial or hearing conducted under this section may be served at any place in the United States.

(iii) Statute of limitations

(I) In general.  An action under this subsection may not be brought--

(aa) more than 6 years after the date on which the violation of subparagraph (A) occurred; or

(bb) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A).

(II) Required action within 10 years.  Notwithstanding subclause (I), an action under this subsection may not in any circumstance be brought more than 10 years after the date on which the violation occurs.

(C) Relief.  Relief for an individual prevailing in an action brought under subparagraph (B) shall include--

(i) reinstatement with the same seniority status that the individual would have had, but for the discrimination;

(ii) 2 times the amount of back pay otherwise owed to the individual, with interest; and

Addendum 5

(iii) compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

(2) Confidentiality

(A) In general.  Except as provided in subparagraphs (B) and (C), the Commission and any officer or employee of the Commission shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower, except in accordance with the provisions of section 552a of Title 5, unless and until required to be disclosed to a defendant or respondent in connection with a public proceeding instituted by the Commission or any entity described in subparagraph (C). For purposes of section 552 of Title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section.

(B) Exempted statute.  For purposes of section 552 of Title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section 552.

(C) Rule of construction.  Nothing in this section is intended to limit, or shall be construed to limit, the ability of the Attorney General to present such evidence to a grand jury or to share such evidence with potential witnesses or defendants in the course of an ongoing criminal investigation.

(D) Availability to Government agencies

(i) In general.  Without the loss of its status as confidential in the hands of the Commission, all information referred to in subparagraph (A) may, in the discretion of the Commission, when determined by the Commission to be necessary to accomplish the purposes of this chapter and to protect investors, be made available to--

(I) the Attorney General of the United States;

(II) an appropriate regulatory authority;

(III) a self-regulatory organization;

Addendum 6

(IV) a State attorney general in connection with any criminal investigation;

(V) any appropriate State regulatory authority;

(VI) the Public Company Accounting Oversight Board;

(VII) a foreign securities authority; and

(VIII) a foreign law enforcement authority.

(ii) Confidentiality

(I) In general.  Each of the entities described in subclauses (I) through (VI) of clause (i) shall maintain such information as confidential in accordance with the requirements established under subparagraph (A).

(II) Foreign authorities.  Each of the entities described in subclauses (VII) and (VIII) of clause (i) shall maintain such information in accordance with such assurances of confidentiality as the Commission determines appropriate.

(3) Rights retained.  Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any whistleblower under any Federal or State law, or under any collective bargaining agreement.

. . .

(j) Rulemaking authority.  The Commission shall have the authority to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section consistent with the purposes of this section.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29(d) and 32(a)(7)(B) because it contains 6,986 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-Point Times New Roman.

/s/ Stephen G. Yoder
Stephen G. Yoder
Senior Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040

February 20, 2014

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on February 20, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Stephen G. Yoder
Stephen G. Yoder
Senior Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040

February 20, 2014